**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
AMERICAN TAX FUNDING, LLC,

                        Plaintiff,

       - v -                                     Civ. No. 1:12-CV-1026
                                                                            (MAD/RFT)

CITY OF SCHENECTADY

                        Defendant.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

In this breach of contract lawsuit, the current issue before the Court is whether recent developments have created a non-waivable conflict of interest for the City of Schenectady's recently retained lawyers. More specifically, the Court must determine whether the confluence of its former law clerk's presence during a settlement conference presided over by this Court and his freshly minted employment by Schenectady's new attorneys consequently lead to the disqualification of the law firm in this matter.

### A. Relevant Case History

Responding to the parties' respective Requests, *see* Dkt. Nos. 29 & 30, on January 10, 2014, the Court issued an Order setting up a settlement conference for February 7, 2014. Dkt. No. 33. At the moment this Order was issued, Schenectady was represented by its Corporation Counsel, John Polster, Esq., American Tax

Funding, LLX (hereinafter American Tax) was represented by the Camardo Law Firm[1], and Daniel S. Rubin, Esq., served as this Court's term law clerk. Just prior to the Conference, Schenectady filed on the Case docket a Letter-Brief serving as a settlement proposal, while American Tax did not. Dkt. No. 34, Def.'s Lt.-Br., dated February 3, 2014. A Settlement Conference was held on February 7, 2014.

During the Settlement Conference, all parties were present and accompanied by their respective attorneys. Also present during the Settlement Conference were the Court's two law clerks including Daniel Rubin, the courtroom deputy clerk, and possibly a student intern. As a long-held practice, interns and law clerks are permitted to shadow the Court during settlement conferences, and such occurred on February 7, 2014. With the exception of a very brief separation between the parties, the Conference was exclusively an extended, face-to-face negotiation between the parties. With the understanding that nothing said between the parties would constitute an admission against interest, the parties openly and candidly discussed the issues while endeavoring to arrive at an agreement. After nearly two hours of discussion, the Court adjourned the Settlement Conference and issued an Order staying the case. Dkt. No. 35, Text Order, dated Feb. 7, 2014. That stay remained active for approximately three

---

[1] Joseph A. Carmardo, Jr., Esq., and Justin Huffman, Esq., serve as the principal attorneys for American Tax.

months while the parties filed monthly status reports. The stay was lifted on May 13, 2014, and the Scheduling Order was amended. Dkt. No. 45, Text Order. However, another stay of the litigation was invoked while the Honorable Mae A. D'Agostino, United States District Judge, determined whether the Court had subject matter jurisdiction. Dkt. No. 50, Text Order, dated July 15, 2014. After ruling that the Court has subject matter jurisdiction, the second stay was lifted on September 29, 2014. Dkt. No. 59, Text Order.

In the interim, Schenectady's Corporation Counsel and attorney of record, John Polster, retired on or about August 30, 2014. In his stead, Schenectady retained the law firm of Girvin and Ferlazzo, PC to represent it in this matter, and a Stipulation seeking Substitution of Attorney was filed on September 24, 2014. Dkt. Nos. 57. Def.'s Stip., dated Sept. 24, 2014, & Consent Order, dated Sept. 24, 2014. Coincidentally, on or about September 8, 2014, Daniel S. Rubin became an associate of the Girvin Ferlazzo law firm. Shortly after filing a notice of appearance, Christopher P. Langois, Esq., of counsel to Girvin Ferlazzo, reported, "in the interest of full disclosure," Rubin's employment status with the firm, and further stated that "in accordance with Canon 3(D) of the Code of Conduct for Judicial Employees" and "Advisory Opinion 109 of the Judicial Conference Committee on Codes of Conduct," Attorney Rubin "understands that he may not disclose any confidential information

received in the course of his official duties as a former law clerk" nor will he "in any way participate or assist, directly or indirectly, in this case." Dkt. No. 60, Def.'s Lt.-Br., dated Sept. 30, 2014.

This revelation, among other issues, provoked the Court to convene another telephone conference. During the Conference, which was held on October 10, 2014, the potential conflict of interest relative to Schenectady's new counsel was discussed. Rather than having the parties engage in an extended motion practice on the issue, the Court issued an Order directing the parties to simultaneously file Letter-Briefs and further advising that the Scheduling Order will not be amended until the conflict of interest matter is resolved. Dkt. Nos. 61, Text Order, dated Oct. 14, 2014, & 62, Clarification Text Order, dated, Oct. 14, 2014. As directed, the parties timely filed their respective Letter-Briefs. Dkt. Nos. 63, Def.'s Lt.-Br., dated Oct. 31, 2014, & 64, Pl.'s Lt.-Br., dated Oct. 31, 2014.

### B. The Parties' Letter-Briefs

Other than what has been revealed *via* the Case docket, the parties' respective Letter Briefs disclose very few other salient facts, except to note that Girvin and Ferlazzo is a law firm of twenty approximately (20) lawyers and that American Tax's CEO recognized Rubin from a photograph as one of the persons who attended the Settlement Conference Def.'s Lt.-Br. at p. 2; Pl.'s Lt.-Br. at p. 2, ¶¶ 3 & 4. Regarding

the potential conflict, Attorney Langlois provides that his September 30th Letter was shared with Attorney Rubin who "confirmed his knowledge and acceptance of the restriction" and that he would not participate nor assist in the representation of Schenectady in this case. Def.'s Lt.-Br. at p. 2. More importantly, Attorney Langlois states stating that he

> advised each of he firm's other attorneys and staff members in writing that Mr. Rubin is precluded from participating in, working on, or discussing this case, and that he should not be engaged on the matter by an attorney or staff member . . . . With the exception of research performed by an associate (not Mr. Rubin) in connection with this letter brief, no [Girvin and Ferlazzo] attorney other than myself has had any involvement in this matter or the related proceeding currently pending in the New York Supreme Court, Schenectady County. All of the files pertaining to this matter are separately located and maintained in my office, and no other [Girvin and Ferlazzo] attorney or staff member has reviewed or been given access to those files. . . . [N]o [Girvin & Ferlazzo] attorney or staff member has had any communication whatsoever with Mr. Rubin regarding this matter.

Def.'s Lt.-Br. at p. 2.

Both parties concur that Canon 3D of the Code of Conduct for Judicial Employees mandates that current and former judicial employees should never disclose any confidential information received in the course of official duties and that Advisory Opinion 109 continues to state that former law clerks should isolate themselves from pending matters and refrain from working on all cases in which he participated during the clerkship. The parties differ as to whether, in this case, Girvin and Ferlazzo should be disqualified as well. Although there is no formal motion, American Tax

-5-

submits that Girvin and Ferlazzo should be disqualified as Schenectady's Counsel. Pl.'s Lt.-Br. at p. 7. Obviously deliberating upon a possible disqualification is a "fact-intensive endeavor." *Zalewski v. Sherloc Homes, LLC*, 856 F. Supp. 426 (N.D.N.Y. 2012) (citing *Miness v. Ahuja*, 762 F. Supp. 2d 465, 478 (E.D.N.Y. 2010)).

## C. Analysis

A court's authority to disqualify an attorney is derived from its inherent authority to preserve the integrity of the adversarial process, thus bestowing it with broad discretion. *Hemsptead Video, Inc. v. Inc. Vill of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005); *Purgess v. Sharrock*, 33 F.3d 133, 134 (2d Cir. 1994). Because disqualification may dangerously imperil a client's right to the counsel of his choosing, it should only be imposed when there is a significant risk of taint upon the trial. *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981). Since motion to disqualify are viewed with disfavor, the party seeking disqualification must meet a high standard of proof before disqualification will be granted. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (observing that there is "a particularly trenchant reason for requiring a high standard of proof").

When deciding an issue of disqualification, courts often seek guidance from the American Bar Association (ABA) and/or state disciplinary rules, "though such rules merely provide general guidance and not every violation of a disciplinary rule will

necessary lead to disqualification." *Hempstead Video*, 409 F.3d at 132. Appreciating that a federal court is not bound by either the ABA's Model Code or New York State's Code of Professional Conduct, the Court, nonetheless, calls upon the latter for counseling. New York's Code of Professional Conduct has a specific Rule addressing conflicts of interest that may arise for former judges and consequently former law clerks. 22 NYCRR § 1200.1.12 (hereinafter "Rule 1.12"). It is axiomatic that a "lawyer shall not accept private employment in a matter upon the merits of which the lawyer has acted in a judicial capacity." Rule. 1.12(a). Unless all parties to the proceeding give informed consent, in writing, a former judge or law clerk "shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially[.]" *Id*. at 1.12(b)(2) & (c). Though it is debatable whether Attorney Rubin, as this Court's law clerk, "personally and substantially" participated in the Settlement Conference, the parties agree that he should not participate in any manner on behalf of Schenectady in this litigation.

Accepting that Attorney Rubin is disqualified from representing Schenectady, the question remains whether his disqualification is imputed to his new employer. This imputation is based upon a presumption that if confidences were disclosed to one member of a law firm, it is easy for each attorney of the firm to become privy to those same confidences. Rule 1.12 provides further guidance as to an erstwhile judicial

employee's potential impact upon his current legal employer:

> When a lawyer is disqualified from representation under this Rule, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless: (1) the firm acts promptly and reasonably to: (i) notify, as appropriate, lawyers and nonlawyer personnel within the firm that the personally disqualified lawyer is prohibited from participating in the representation of the current client; (ii) implement effective screening procedures to prevent the flow of information about the matter between the personally disqualified lawyer and the others in the firm; (iii) ensure that the disqualified lawyer is apportioned no part of the fee therefrom; and (iv) give written notice to the parties and any appropriate tribunal to enable it to ascertain compliance with the provisions of this Rule; and (2) there are no other circumstances in the particular representation that create an appearance of impropriety.

*Id*. at 1.12(d).

The investigation of Rule 1.12(d) factors to determine if Girvin and Ferlazzo should be disqualified is warranted.

Before addressing these factors, a misconception must be corrected. American Tax argues that Attorney Rubin participated personally and substantially as a law clerk on this matter. Pl.'s Lt.-Br. at p. 3.[2] Other than being present as an observer, Attorney Rubin played no role whatsoever in the Settlement Conference. This Court solely and completely presided over the Settlement Conference without any assistance from his law clerks. The negotiation were driven solely by the parties and the Court

---

[2] Though Attorney Langlois was not present during the Settlement Conference, he assumes, *arguendo*, that Rubin participated in order to that state Rubin should be disqualified. Dkt. No. 63, Def.'s Lt., dated Oct. 31, 2014, at p. 3.

did not have the benefit of his staff's wisdom as to tax foreclosures, tax liens, and the intricacies of the parties' Purchase and Sales Agreement(s). Prior to Conference, this Court neither conferred with Rubin about anything related to this litigation nor had cause to do so. While the Settlement Conference proceeded, the Court never consulted with Attorney Rubin nor used him as a sounding board. Because the parties negotiated this matter face-to-face, there was little if any opportunity to employ the clerks as sounding boards. Frankly, under this scenario, Rubin did not acquire any confidences that would jeopardize either party's position in this case nor taint a jury trial.[3]

Girvin and Ferlazzo opines that it has taken each step required by Rule 1.12(d)(1) to avoid being disqualified. Def.'s Lt-Br. at p. 4. The first inquiry is whether Girvin and Ferlazzo acted promptly and reasonably when learning of Attorney Rubin's potential connection to this matter and what was its solution. Timeliness and effectiveness are essential. Girvin and Ferlazzo posits that once it learned of the potential conflict, it erected a screen around Rubin isolating him from any contact with the case or the assigned litigator. In terms of timeliness, "[t]he law firm must establish a screen either from the first moment the conflicted attorney

---

[3] Plaintiff has not set forth any example of confidential and privileged information that Attorney Rubin may have either gleaned or possessed while serving as a law clerk to this Court. *See Brown v. City of Syracuse*, 2013 WL 2445050, at *3 (N.D.N.Y. June 4, 2013).

transfers to the firm or when the firm first receives **actual notice of the conflict**." *Human Elec., Inc. v. Emerson Radio Corp.*, 375 F. Supp. 2d 102, 107 (N.D.N.Y. 2004) (citations omitted) (emphasis in the original). Rubin joined the firm on September 8, 2014, but there was no appearance of a conflict then because Girvin and Ferlazzo were neither retained nor substituted as counsel until September 24. Within a week of that substitution of counsel, on September 30, 2014, Attorney Langlois advised the Court of the issue and sketched out a basic screening mechanism to resolve the appearance of any impropriety. *See* Dkt. No. 60 ("Mr. Rubin has not and will not in any way participate or assist, directly or indirectly, in this case."). And, shortly thereafter, a telephone Conference was held to further address the issue. Under these circumstances, the Court finds that Girvin and Ferlazzo acted promptly.

Next, the Court must determine if the screening is reasonable and effective. That screen must prevent the flow of information about the matter between the personally disqualified lawyer and other members of the firm. Rule 1.12(d)(1)(ii). In order to establish that it has complied with the letter and spirit of Rule 1.12(d)(1), Attorney Langlois advises[4] this tribunal that (1) all lawyers and staff within the firm,

---

[4] As an aside, American Tax raises that neither Attorney Langlois nor Attorney Rubin provided an affidavit in support of Girvin and Ferlazzo's posture that it should not be disqualified. Pl.'s Lt.-Br. at p. 5, ¶ 13. As the parties know, briefing of this issue was expedited, dispensing with a formal motion, affidavits, and memorandum of law. Nonetheless, attorneys who appear before the Court are deemed to be officers of the Court and expected to address the Court truthfully at all times.
(continued...)

*-10-*

including Rubin, have been notified in writing that Mr. Rubin is prohibited from participating, in any manner, in the representation of Schenectady in this case; (2) Rubin has not shared any information about his time as a law clerk with Langlois; and (3) Rubin will not share in any fee from this representation. *See* Rule 1.12(d)(1)(i)-(iv); *see generally* Dkt. Nos. 60 & 63, Def.'s Lt.-Br. The elements of this screen seem to suffice as a sufficient rebuttal of any imputation of disqualification. However, there may be one handicap that could cause some reservation.

Courts within this Circuit have, for some time, held reservations as to whether small firms can erect an appropriate and adequate screen to deflect the exposure of a party's confidences. These courts have conservatively clung to the presumption of confidences being shared within a firm are much stronger within a small firm than a large firm, and, moreover, have harbored doubts as to the sufficiency of such preventive measures to shield those confidences. *Fillippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 308 (E.D.N.Y. 2010) ("It is possible that the circumstances of a small firm may be such that a court will not be able to determine whether the proposed or implemented screening measures will effectively prevent disclosure."). As a generalization, these courts view small law firms as those with less than thirty-five (35) lawyers. *See e.g., Cheng v. GAF Corp.*, 631 F.2d 1052 (2d Cir.

---

[4](...continued)
The Court accepts Attorney Langlois's representation as truthful.

1980) (noting that a thirty-five (35) member firm is a relatively small firm); *Marshall v. State of New York, Div. of State Police*, 952 F. Supp. 103 (N.D.N.Y. 1997) (noting that a firm of fifteen (15) lawyers was small). However, the Circuit's dictum in *Cheng* as to the size of the law firm in that case does not serve as a binding precedent, and there is no *per se* rule or black letter law personifying the acceptable numerical size of a law firm when determining the efficaciousness of a screening protocol. *Hempstead Video*, 409 F.3d at 137-38 & n.5 (first noting that lower courts have been following the reasoning of *Cheng* when adjudicating disqualification as to small firms, however, emphasizing that there is no broad categorical rule regarding the practices and structure that protect confidences within a firm or the size of a law firm); *Fillippi*, 722 F. Supp. 2d at 309 n.4 (noting that *Cheng* is not a binding precedent). With that being said, "[c]ourts should inquire on the facts of the case before them whether the practices and structures in place are sufficient to avoid disqualifying taint." *Hempstead Video*, 409 F.3d at 137. As long as the law firm exercises special care and vigilance, a small firm can erect a suitable and satisfactory quarantine or isolation of an attorney to protect the sharing of confidential information. *S.E.C. v. Ryan*, 747 F. Supp. 2d 355, 373 (N.D.N.Y. 2010); *Brown v. Syracuse*, 2013 WL 2445050 (N.D.N.Y June 4, 2013) (refusing to disqualify a four-person law firm).

Girvin and Ferlazzo promptly and reasonable forewarned its entire operation

as to how Attorney Rubin will be walled off from any role in this case, and immediately alerted this Court of the appearance of a conflict. Attorney Langlois advises that if Rubin possesses any of American Tax's confidences, none has been shared with him. Langlois advises that Rubin will not share in any of the fees that may be generated in this matters. Distilled to its essential core and convincing facts, Attorney Rubin has not worked on the file, never will, and there has been no exchange of confidences. In the final analysis, the measures implemented by Girvin and Ferlazzo to isolate Attorney Rubin from any aspect of this matter rebuts the presumption of any shared confidences that possibly could have come within his grasp while serving as this Court's law clerk. Any significance of Attorney Rubin's presence during the Settlement Conference or his speculated access to American Tax's confidential information is minuscule, trivial, too remote, and to attenuated to merit imputation of any purported conflict of interest. And, especially because another judge, who was not present nor privy to the discourse during the Settlement Conference, will preside over the trial, there is no real risk that the trial will be tainted. *Hempstead Video*, 409 F.3d at 138 ("We see no reason why, in appropriate cases and on convincing facts, isolation – whether it results from the intentional construction of a 'Chinese Wall,' or from *de facto* separation that effectively protects against any sharing of confidential information – cannot adequately protect against taint."); *see*

*also Bd. of Educ. of City of New York. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (noting that a court should be "quite hesitant" to disqualify unless there is a taint of the underlying trial).

Here, the circumstances do not rise to the level of a nonwaivable or irreconcilable conflict of interest. Girvin and Ferlazzo's screening plan is prompt and reasonable. And based upon all of the foregoing, it is hereby **Ordered** that Girvin and Ferlazzo will not be disqualified as the City of Schenectady's Counsel for the purpose of this litigation.

**IT IS SO ORDERED**.

December 2, 2014
Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge